STATE OF NORTH CAROLINA v. KEITHEN ALEXANDER CURMON

No. COA04-1480

(Filed 19 July 2005)

## 1. Arson— first-degree—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree arson even though defendant contends there was insufficient evidence to show that he was the perpetrator of the arson, because the evidence taken in the light most favorable to the State showed: (1) defendant was jealous of his ex-girlfriend's relationship with her new boyfriend and constantly harassed the couple in an attempt to break them up and scare the girl into reconciling with defendant, thus demonstrating defendant's motive to set the fire; (2) defendant left a message a few months before the fire threatening to burn the couple if they did not return his call; (3) on the night of the fire defendant left another threatening message on his ex-girlfriend's cell phone stating they had one more conversation to have and that was going to be it; (4) defendant was in the vicinity of the new boyfriend's apartment at the time the fire occurred, as demonstrated by his cell phone records, thereby establishing he had the opportunity to set the fire; (5) defendant had previously entered his ex-girlfriend's home and threatened to kill her; and (6) the gasoline on the mat indicated the fire was deliberately set.

## 2. Sentencing— restitution—vacated

The trial court's restitution recommendation included in the judgment in a first-degree arson case that ordered defendant to pay $100 to his ex-girlfriend's new boyfriend for damages sustained as a result of the fire must be vacated because it was not supported by the evidence.

## 3. Sentencing— no contact recommendation—reasonableness

The trial court's recommendation in a first-degree arson case that defendant have no contact with his ex-girlfriend, her new boyfriend, and her family for the duration of defendant's incarceration was not an unconstitutional form of punishment, because: (1) the "no contact" recommendation was not a mandatory and binding part of the judgment and as such does not violate N.C. Const. art. XI, § 1; (2) considering the nature and extent

of defendant's harassment of the couple, the trial court's recommendation that defendant have no contact with either of them or the ex-girlfriend's family was reasonable; and (3) the recommendation is also reasonable since it is limited to a specific and well-defined group and is limited in duration to defendant's incarceration.

**4. Evidence— prior crimes or bad acts—motive—intent—plan—common scheme—identity**

The trial court did not abuse its discretion in a first-degree arson case by admitting evidence of defendant's other crimes under N.C.G.S. § 8C-1, Rule 404(b) including the 18 January 2003 incident when he left a voice message threatening to "burn you all up" if his ex-girlfriend did not return his call and the 9 March 2003 incident when the ex-girlfriend and her new boyfriend sought police assistance since defendant was following them and thereafter left a threatening message telling the new boyfriend "you better not come home," because: (1) the first statement was admissible to prove defendant's motive, intent, plan, common scheme, and defendant's identity as the arsonist; (2) the second incident was admissible for the same enumerated purposes when defendant continually harassed the couple by making numerous phone calls, leaving threatening messages, following the couple around, and even hiding in the ex-girlfriend's home and threatening to kill her with a knife; (3) even though the incidents were not the precise type of crimes for which defendant was charged, it shows an alarming trend of defendant's escalating acts of violence toward the couple due to his jealousy over their relationship; (4) although the threatening messages were left within a matter of months prior to the fire, remoteness in time is less significant when the prior conduct is used to show intent, identity, motive, common plan or scheme, or absence of mistake; and (5) the trial court guarded against the possibility of prejudice by instructing the jury to consider the evidence only for the limited purposes of establishing identity, intent, motive, absence of mistake, and common plan.

**5. Evidence— prior crimes or bad acts—identity**

The trial court did not err in a first-degree arson case by instructing the jury that it could consider the 18 January and 9 March 2003 "other crimes" evidence to prove identity, because: (1) the evidence of these other crimes or wrongs was admissible for the limited purposes enumerated in N.C.G.S.

§ 8C-1, Rule 404(b) and it was proper for the judge to give a limiting instruction concerning what purpose the jury could use the evidence; and (2) the judge's instruction was a correct statement of the law.

Appeal by defendant from judgment entered 8 January 2004 by Judge James C. Spencer in Wake County Superior Court. Heard in the Court of Appeals 9 June 2005.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

STEELMAN, Judge.

Defendant, Keithen Alexander Curmon, appeals his conviction for first-degree arson. For the reasons discussed herein, we find no error.

The evidence presented at trial tended to show that Sharon Bethea and defendant had a romantic relationship, which ended in the fall of 2002. Following their breakup, the two remained on relatively friendly terms. However, when Ms. Bethea began dating David Rochelle, defendant began harassing both of them with unwanted phone calls. Ms. Bethea told defendant not to contact her any further. Defendant continued to call her house attempting to effect a reconciliation and came to her home in December 2002. Ms. Bethea contacted the police who arrived and instructed defendant to leave her alone.

Approximately a week later, Ms. Bethea came home and found defendant under her daughter's bed. When she told him to leave he went to the kitchen, grabbed a knife, and threatened to kill her. Ms. Bethea managed to knock the knife out of defendant's hand and ran to her car. Defendant laid down behind her car, preventing her from leaving. When defendant finally got up, Ms. Bethea drove to a nearby grocery store and called the police. Ms. Bethea waited at the grocery store for the police, who accompanied her back to her home. When they arrived they found defendant in her bed. The following day Ms. Bethea obtained a temporary restraining order against defendant. Following a hearing on 31 December 2002, the trial court entered a domestic violence protective order pursuant to N.C. Gen.

Stat. § 50B-3, which prohibited defendant from contacting Ms. Bethea. Despite the court order, defendant continued to harass her by telephoning her numerous times a day, coming by her home, leaving notes in her mailbox, following her and Mr. Rochelle, and calling Mr. Rochelle's apartment.

On 18 January 2003, defendant phoned Ms. Bethea approximately eighty-six times while she was at Mr. Rochelle's apartment. Mr. Rochelle was able to determine that defendant was the caller by the appearance of his name on Caller ID. Defendant only left one message in which he said, "If you don't call me back in seven minutes, I am going to burn you all up, I'm serious, seven minutes." Ms. Bethea called the police who came to the apartment and transcribed the message. Defendant called six more times that night while the police were there, even though they told him to stop. As a result of the threatening message, Corporal B.D. Allen of the Raleigh Police Department charged defendant on 19 January 2003 for communicating a threat.

In another incident on 9 March 2003, defendant began following Ms. Bethea and Mr. Rochelle when they left her residence to go to Mr. Rochelle's apartment. While following the couple, defendant called Ms. Bethea's cell phone. When Mr. Rochelle answered the phone, defendant repeatedly told him "you better not come home." Upon seeing two police officers at a restaurant the couple stopped and reported the incident, and as a result the officers escorted the couple back to Ms. Bethea's home.

On the evening of 6 April 2003, Ms. Bethea arrived at Mr. Rochelle's apartment around 10:30 or 11:00 p.m. The couple went to bed at around midnight. A few minutes later, defendant called Mr. Rochelle's phone, but he did not answer. Approximately five minutes after the call the smoke alarm inside the apartment went off. The living room and kitchen were filled with smoke. The smoke and fire were coming through the side of the front door of Mr. Rochelle's apartment, and the bottom of his front door was on fire. The door mat had also been burned and pushed under the door. Ms. Bethea called 911 and the police and firefighters arrived shortly thereafter. Following the arrival of the police, Ms. Bethea discovered she had three messages on her cell phone from defendant. Officer D.A. Karlinski of the Raleigh Police Department responded to the 911 call and transcribed one of defendant's messages in which he said, "Give me a call when you get this message. We have got about one

more conversation to have, and that's going to be it. Be a Mom, Sharon. Be a Mom."

The police sent the remains of the doormat to the SBI laboratory for forensic evaluation. The tests revealed that gasoline had been poured on the mat, thus confirming that the fire was intentionally set.

There were no eye witnesses to the crime or fingerprints found. Because of defendant's past threats to Ms. Bethea and Mr. Rochelle, the police questioned him. Defendant denied any involvement and told the police that on the night of the fire he left his mother's home in Raleigh around 10:00 p.m. and that at the time of the fire he was somewhere on Highway 70 going towards New Bern. Defendant said his car broke down on the way so he turned around and drove back to Raleigh.

Police obtained defendant's cell phone records from Sprint, which included phone numbers called, date, time, duration and a list of the cell towers that relayed those calls. Ms. Marilyn Cowlter, an employee of Sprint, testified the range of a cell tower was one to three miles. Defendant's cell phone records showed that at 11:06 p.m. on 6 April 2003 he called Ms. Bethea's cell phone. The call was relayed by the cell tower located at or near 4812 Six Forks Road, which is in northern Raleigh. Defendant placed additional calls from his cell phone at 11:13 p.m. on 6 April 2003 and at 12:38 a.m., 12:40 a.m., 12:45 a.m., 12:55 a.m., 12:59 a.m., and 1:16 a.m. on 7 April 2003. The fire occurred at approximately 12:00 a.m. on 7 April 2003. The calls defendant made that night were relayed by the cell phone towers located at or near Harps Mill Road, Creedmoor Road, and Leesville Road, all located in north Raleigh and in the vicinity of Mr. Rochelle's apartment.

Police arrested defendant and charged him with three counts of first-degree arson, one count of second degree arson, and one count of violating the domestic violence protective order. The cases were joined for trial without objection and were tried at the 5 January 2004 session of superior court. At the close of all the evidence, the trial court dismissed the charge of second degree arson. The jury found defendant guilty of three counts of first-degree arson, as well as violating the domestic violence protective order. The trial court continued prayer for judgment on two of the first-degree arson convictions pertaining to the burning of the residences that adjoined Mr. Rochelle's. The trial court then sentenced defendant to an active sen-

tence of 77 to 102 months imprisonment for first-degree arson of Mr. Rochelle's dwelling and 150 days imprisonment for violation of the domestic violence protective order. Defendant appeals only his conviction for first-degree arson.

[1] In defendant's first argument he contends the trial court erred in denying his motion to dismiss because there was insufficient evidence that he was the perpetrator of the arson. We disagree.

In order to survive a motion to dismiss based on the insufficiency of the evidence, the State must present substantial evidence of (1) each essential element of the charged offense and (2) that the defendant was the perpetrator. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). Substantial evidence refers to such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Lucas*, 353 N.C. 568, 580-81, 548 S.E.2d 712, 721 (2001). When considering such a motion, the court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455. It does not matter whether the State's evidence is direct, circumstantial, or both; the test for resolving a challenge to the sufficiency of the evidence is the same. *Lucas*, 353 N.C. at 581, 548 S.E.2d at 721. "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation and internal quotation marks omitted). If the State's evidence is circumstantial, the court must consider whether the defendant's guilt may reasonably be inferred from those circumstances. *Id.* In addition, the trial judge "may resort to circumstantial evidence of motive, opportunity and capability to identify the accused as the perpetrator of the crime." *State v. Taylor*, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994). Once the trial judge decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, it then becomes a matter for the jury to decide whether the evidence presented satisfies the jury beyond a reasonable doubt that the defendant is guilty. *Id.*

The evidence, taken in the light most favorable to the State, tends to show: (1) defendant was jealous of Ms. Bethea's relationship with Mr. Rochelle and constantly harassed the couple in an attempt to break them up and scare Ms. Bethea into reconciling with him, demonstrating defendant's motive to set the fire; (2) defendant left a message a few months before the fire threatening to burn the couple up if they did not return his call; (3) on the night of the fire

STATE v. CURMON

[171 N.C. App. 697 (2005)]

defendant left another threatening message on Ms. Bethea's cell phone stating: "We got about one more conversation to have and that's going to be it[;]" (4) defendant was in the vicinity of Mr. Rochelle's apartment at the time the fire occurred, as demonstrated by his cell phone records, thereby establishing he had the opportunity to set the fire; (5) defendant had previously entered Ms. Bethea's home and threatened to kill her; and (6) the gasoline on the mat indicated the fire was deliberately set.

We hold that this evidence was sufficient to submit the charge of first-degree arson to the jury. " 'In 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury . . . .' " *State v. Jenkins*, 167 N.C. App. 696, 701, 606 S.E.2d 430, 433, *aff'd*, 359 N.C. 423, 611 S.E.2d —— (2005) (citations omitted). Therefore, the trial court did not err in denying defendant's motion to dismiss and submitting the matter to the jury for its determination. This argument is without merit.

**[2]** In defendant's second argument he contends the trial court's restitution recommendation included in the judgment, ordering defendant to pay $100.00 to David Rochelle for damages sustained as a result of the fire, must be vacated because it was not supported by the evidence.

If the trial judge recommends payment of restitution as a condition to defendant's parole or work release, the amount of restitution recommended must be supported by evidence received at trial or sentencing. *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995). The State concedes the trial court's order was not supported by the evidence and must be vacated.

**[3]** In defendant's third argument he contends the trial court's recommendation that he have no contact with Mr. Rochelle, Ms. Bethea, or her family for the duration of his incarceration is an unconstitutional form of punishment. We disagree.

The State contends defendant is prohibited from raising this issue on appeal because he did not object to the recommendation at sentencing as required by Rule 10(b)(1) of the Rules of Appellate Procedure. An error at sentencing is not considered an error at trial for the purpose of Rule 10(b)(1) because this rule is "directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal." *State v. Hargett*, 157 N.C. App. 90, 93, 577 S.E.2d 703, 705 (2003) (cit-

ing *State v. Canady*, 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991)). Accordingly, defendant was not required to object at sentencing to preserve this issue for appellate review.

In the judgment sentencing defendant on the first-degree arson charge the trial court recommended defendant have "no contact with David Rochelle, Sharon Bethea or family during incarceration." Defendant contends this recommendation violates N.C. Const. art. XI, § 1. which provides:

> The following punishments only shall be known to the laws of this State: death, imprisonment, fines, suspension of jail or prison term with or without conditions, restitution, community service, restraints on liberty, work programs, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State.

The trial court's "no contact" recommendation was not a mandatory and binding part of the judgment. Rather, much like an order of restitution, it "constitutes a *recommendation* to the Secretary of the Department of Correction and the Parole Commission, not an order binding defendant . . . upon entry of the judgment in this action," as "neither the Parole Commission nor the Department of Correction is bound by the judge's recommendation . . . ." *Wilson*, 340 N.C. at 725-26, 459 S.E.2d at 195. Since this recommendation is not a binding judgment, it does not run afoul of our state's constitution.

However, since the "no contact" recommendation is analogous to the trial court's authority to recommend a defendant pay restitution, it must be reasonable in light of the evidence adduced at trial or sentencing. *See id.* at 726, 459 S.E.2d at 196 (requiring such support despite the fact the recommendations are not binding because there is " 'no reason to interpret the statutes of this State to allow judges to make specific recommendations that cannot be supported by the evidence before them' ") (citations omitted).

Considering the nature and extent of defendant's harassment of the couple, the trial court's recommendation that defendant have no contact with either of them or Ms. Bethea's family was reasonable. In addition, the recommendation is also reasonable because it is limited to a specific and well-defined group and is limited in duration to defendant's incarceration. This argument is without merit.

**[4]** In defendant's fourth argument he contends the trial court committed reversible error in admitting the State's evidence of defend-

ant's "other crimes," as it was irrelevant and inadmissible under Rule 404(b) and Rule 403 of the Rules of Evidence. We disagree.

Specifically, defendant objects to the admission of evidence related to the 18 January 2003 incident when he left a voice message threatening to "burn you all up" if Ms. Bethea did not return his call. Defendant also cites the admission of evidence regarding the incident on 9 March 2003 when the couple sought police assistance because defendant was following them and then left a threatening message telling Mr. Rochelle "you better not come home." Defendant objected and the trial court overruled the objection finding the evidence admissible under Rule 404(b) of the Rules of Evidence.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2004). Rule 404(b) is a rule of inclusion not exclusion. *State v. Lloyd*, 354 N.C. 76, 88, 552 S.E.2d 596, 608 (2001). Accordingly, such evidence will be "admissible so long as it is relevant to any fact or issue other than the character of the accused[,]" and the other crimes or wrongs are connected by both temporal proximity and circumstance. *Id.* (citations and internal quotation marks omitted). "The determination of similarity and remoteness is made on a case-by-case basis, and the required degree of similarity is that which results in the jury's 'reasonable inference' that the defendant committed both the prior and present acts." *State v. Stevenson*, 169 N.C. App. 797, 800, 611 S.E.2d 206, 209 (2005). "The similarities need not be 'unique and bizarre.' " *Id.* (citations omitted).

Here, defendant's statement that if someone did not call him back he was going to "burn you all up," was admissible to prove a number of the listed purposes, namely defendant's motive, intent, plan, common scheme, as well as defendant's identity as the arsonist. Further, the evidence concerning the incident on 9 March 2003 was also admissible for the same enumerated purposes. Defendant continually harassed the couple. He made numerous phone calls, left threatening messages, followed the couple around, and even hid in Ms. Bethea's home and threatened to kill her with a knife. All of this evidence was

admitted without objection by defendant. While these were not the precise type of crimes for which defendant was charged, it shows an alarming trend of defendant's escalating acts of violence towards the couple due to his jealousy over their relationship.

The threatening messages were left within a matter of months prior to the fire. Remoteness in time is less significant when the prior conduct is used to show intent, identity, motive, common plan or scheme, or absence of mistake, as is the case here. *Id.* at 801, 611 S.E.2d at 210 (noting "remoteness in time generally affects only the weight to be given such evidence, not its admissibility") (quoting *Lloyd*, 354 N.C. at 91, 552 S.E.2d at 610). Thus, the trial court did not err in determining the evidence was admissible under Rule 404(b).

Defendant also asserts that even if the evidence of his "other crimes" was admissible under Rule 404(b), the trial court should have excluded it under Rule 403 of the Rules of Evidence. Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2004). "The exclusion of evidence under Rule 403 is a matter generally left to the sound discretion of the trial court[.]" *Stevenson*, 169 N.C. App. at 801-02, 611 S.E.2d at 210. Accordingly, we will not overturn the trial judge's decision absent a showing that the decision was " 'manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision.' " *Id.* (citations omitted).

In the instant case, the trial court did not abuse its discretion by admitting evidence of defendant's prior crimes or acts. The trial court guarded against the possibility of prejudice by instructing the jury to consider the evidence only for the limited purposes of establishing identity, intent, motive, absence of mistake, and common plan. *Accord id. See also* State v. *Hyatt*, 355 N.C. 642, 662, 566 S.E.2d 61, 75 (2002) (holding the admission of evidence regarding defendant's prior misconduct was not unduly prejudicial under Rule 403 where the trial court gave a limiting instruction regarding the permissible uses of 404(b) evidence). Thus, this argument is without merit.

[5] In defendant's fifth and final argument he contends the trial court erred in instructing the jury that it could consider the 18 January and 9 March 2003 "other crimes" evidence to prove identity. We disagree.

The trial court instructed the jury that the evidence concerning defendant's previous threats to Ms. Bethea with a knife, stating he

would "burn you all up," and telling the couple they better not go home, should only be considered for the limited purpose of showing the identity of the person who committed the crime, that defendant had a motive for the commission of the crime, that defendant had the intent, which is a necessary element of the crime charged, that there existed in defendant's mind a plan, scheme, system or design involving the crime charged in the case, and the absence of mistake or accident. As we stated above, the evidence of these other crimes or wrongs was admissible for the limited purposes enumerated in Rule 404(b). Therefore, it was proper for the judge to give a limiting instruction concerning what purpose the jury could use the evidence. In addition, the judge's instruction was a correct statement of the law. *See* N.C.P.I.—Crim. 104.15. This argument is without merit.

For the reasons discussed herein, we find defendant received a fair trial, free from error. We remand the case for modification of the portion of the trial court's judgment recommending defendant pay restitution in the amount of $100.00.

NO ERROR AS TO TRIAL; REMANDED FOR STRIKING OF RESTITUTION PROVISION IN THE JUDGMENT.

Judges HUDSON and JACKSON concur.